UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

GORDA DUNIGAN, as Personal
Representative of the ESTATE OF
JAMES DUNIGAN, Deceased,

     Plaintiff,

v.

BRONSON METHODIST HOSPITAL,

     Defendant.

_____

Case No. 1:16-cv-01324
Hon. Janet T. Neff
Magistrate Judge Ellen S. Carmody

GORDA DUNIGAN, as Personal
Representative of the ESTATE OF
JAMES DUNIGAN, Deceased,

     Plaintiff,

v.

OFFICER DEREK NUGENT and
OFFICER ERIC SHAFFER,

     Defendants.

Case No. 1:16-cv-01325
Hon. Janet T. Neff
Magistrate Judge Ellen S. Carmody

**BRIEF OF DEFENDANTS
NUGENT AND SHAFFER IN FAVOR
OF CONSOLIDATION OF CASES
FOR TRIAL**

_____/

James J. Harrington, IV (P65351)
Christian Peter Collis (P54790)
Fieger, Fieger, Kenney & Harrington, P.C.
19390 W. 10 Mile Rd.
Southfield, MI 48075
Ph: (248) 355-5555
j.harrington@fiegerlaw.com


John C. O'Loughlin (P33343)
Smith, Haughey, Rice & Roegge
Attorney for Defendant Bronson
100 Monroe Center NW
Grand Rapids, MI 49503
Ph: (616) 774-8000
joloughlin@shrr.com

Allan C. Vander Laan (P33893)
Curt A. Benson (P38891)
Cummings, McClorey, Davis & Acho,
P.L.C.
Attorneys for Defendants
2851 Charlevoix Dr., SE, Ste. 327
Grand Rapids, MI 49546
Ph: (616) 975-7470
avanderlaan@cmda-law.com
cbenson@cmda-law.com

_____/

00651182-1

## BRIEF OF DEFENDANTS NUGENT AND SHAFFER
## IN FAVOR OF CONSOLIDATION OF CASES FOR TRIAL

## TABLE OF CONTENTS

Index of Authorities.................................................................................................ii

Question Presented...............................................................................................iii

Most Controlling Authority ....................................................................................iv

Statement of Facts ................................................................................................ 1

Standard of Review................................................................................................ 4

Argument................................................................................................................ 5

Conclusion and Relief Requested ........................................................................ 7

Certificate of Service ............................................................................................ 7

## INDEX OF AUTHORITIES

### Cases

***Cantrell v. GAF Corp.***, 99 F.2d 1007 ...................................................................... 4, 5

***General Mills Supply Co. v. SCA Services, Inc.***, 697 F.2d 704 (6th Cir. 1982) .......... 6

### Rule

Fed. R. Civ. P. 42 ...................................................................................................... 5

Fed. R. Civ. P. 42(a) ............................................................................................... 5, 7

## **QUESTION PRESENTED**

I.      BECAUSE BOTH OF PLAINTIFF DUNIGAN'S CASES ARISE FROM THE SAME MEDICAL DECISIONS AND SECURITY DIRECTIVES BY BRONSON HOSPITAL EMPLOYEES, AND BECAUSE BOTH CASES REQUIRE THE SAME WITNESS TESTIMONY AND SHARE MANY DOCUMENTARY EXHIBITS, SHOULD PLAINTIFF DUNIGAN'S TWO CASES REMAIN CONSOLIDATED FOR PURPOSES OF TRIAL?

Plaintiff Dunigan will presumably answer: "Yes."

Defendant Bronson answers: "No."

Defendants Nugent and Shaffer answer: "Yes."

## **MOST CONTROLLING AUTHORITY**

Fed. R. Civ. P. 42(a)...................................................................................... 5, 7

**STATEMENT OF FACTS**

The brief of Defendant Bronson Methodist Hospital opposing consolidation of Plaintiff Dunigan's two cases for trial argues that the allegedly tortious actions of Bronson's medical and security personnel are wholly separable and unrelated to the allegedly wrongful conduct of the Defendant Kalamazoo police officers.  This is totally false.

In fact, the Kalamazoo officers acted entirely at the behest and direction of the Bronson Hospital personnel.  Dunigan's claims arise from a single transaction, and trial of both cases will require the same witnesses and documentary evidence.

As explained by Officer Derek Nugent, "*there's an agreement between Bronson Hospital and the police department to staff their emergency room with a police officer*." **(Ex A: Nugent Dep., p. 29)**.  Under this agreement, "*If there's an individual in the emergency room that they - - that the security staff does not want there for any - - you know, any reason, that the - - I was to assist them in helping to remove that person from their property.*"  **(Ex A: Nugent Dep., pp. 44-5)**.  But the decision and direction come from the hospital staff.  In Nugent's words, "*It's their property, so they make that call.  I am just there to facilitate and to help them.*"  **(Ex A: Nugent Dep., p. 45)**.

When Nugent arrived at Bronson for his shift as the emergency room police officer, Nugent was told by hospital security personnel "*that Mr. Dunigan had been discharged from the hospital and was being allowed to sit in the waiting room area until 6:00 a.m., where at that point he was going to be getting and leaving on a city bus*."  **(Ex A: Nugent Dep., pp. 31, 39)**.  Officer Nugent was expressly told by the security staff that Dunigan "*was seen by a doctor, medically cleared - - and discharged from their care.*"  **(Ex A:**

**Nugent Dep., pp. 48-9)**.  When 6:00 a.m. had passed, Officer Nugent contacted Dunigan

and told him "*it was time for him to leave,*" in accordance with what the Bronson Hospital

security personnel had told him.  **(Ex A: Nugent Dep., pp. 47, 79-80)**.  In Nugent's words:

> I can only say that I felt like I was set up for failure from the
> beginning by Bronson Hospital. . . . Because I relied so heavily
> on their assessment and discharge from their care that he
> [Dunigan] was - - he was okay to go with us and get arrested
> from their facility.  *They wanted him gone*.  I felt like I was set
> up for failure.  And that me putting my judgments secondary
> to a doctor's, who has already assessed this individual and
> said he was okay, put me in the situation that I'm in today.
> **(Ex A: Nugent Dep., pp. 79-80)**.

Officer Shaffer received notice from dispatch that Officer Nugent "*needed

assistance with the transport*," and arrived to find Nugent and Dunigan already outside,

pursuant to the Bronson staff demand that Dunigan be removed from their emergency

room.  **(Ex B: Shaffer Dep., p. 19)**.  Hospital staff also told Shaffer that Dunigan was

"*playing the game*" and "*faking*" illness.  **(Ex B: Shaffer Dep., p. 37)**.

Security personnel for Bronson acknowledge the policy of insisting that people

leave the hospital after being discharged by medical personnel.  **(Ex C: Schumaker Dep.,**

**pp. 27-8)**.  Bronson Hospital's own records documented that Dunigan was "*banned from*

*the premises*" as a consequence of his "*trespass*" in the form of not leaving.  **(Ex C:**

**Schumaker Dep., pp. 65-6)**.

It is the position of Defendants Nugent and Shaffer that the events giving rise to

the alleged liability of the various Defendants are inextricably intertwined such that the

liability of any one Defendant cannot be determined in isolation from the others. In

particular, the alleged lability of Nugent and Shaffer arises from the decisions and

directives of the Bronson Hospital staff.  Therefore, the cases against the Defendants should be consolidated for trial.

## STANDARD OF REVIEW

The decision regarding whether to consolidate cases for trial "is a matter within the discretion of the trial court."  ***Cantrell v. GAF Corp.***, 99 F.2d 1007, 1011.  A court may consolidate cases, despite the protestations of a party.  ***Id***.

## ARGUMENT

Consolidation of cases is controlled by Fed. R. Civ. P. 42. Cases may be consolidated for trial if they "involve a common question of fact or law." Fed. R. Civ. P. 42(a). Conversely, cases may be separated for trial "to avoid prejudice, or to expedite and economize."

The Sixth Circuit has identified four factors to be considered by a trial court in making the decision whether or not to consolidate cases for trial. These are: (1) whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, (2) the burden on the parties, witnesses and available judicial resources posed by multiple lawsuits, (3) the length of time required to conclude multiple suits as against a single one, and (4) the relevant expense to all concerned of the single-trial, multiple-trial alternatives. *Cantrell*, 99 F.2d at 1011. "Care must be taken that consolidation does not result in unavoidable prejudice or unfair advantage." *Id*.

In this case, however, the reason for a consolidated trial is obvious. Hospital personnel and the police officer Defendants did not act separately. The officers acted (1) at the direction of *Bronson Hospital security personnel* to remove Dunigan as a trespasser, (2) in accordance with *Bronson Hospital policy* and (3) after *Bronson Hospital medical staff* declared Dunigan fit for discharge. The medical judgment of the hospital medical staff and the directives of the hospital security personnel are as much at issue with regard to the determination of liability on the part of Officers Nugent and Shaffer as they are for determining the liability of Bronson Hospital itself.

As consequence, the medical decision makers at Bronson Hospital, the security personnel at the hospital, and Officers Nugent and Shaffer, will all have to testify as witnesses with regard to the liability of *both* the hospital and the officers.  Moreover, many documentary exhibits (e.g., the medical records regarding Dunigan's condition, hospital trespass policies, and police reports) will need to be presented for both cases.  The cases involve multiple common questions of fact.   Requiring the witnesses to testify and the documents to be presented twice will not in any way "expedite" or "economize" resolution of these cases.

Contrary to the representation by Bronson's brief, there is no apparent risk of prejudice.  The primary role of the jury is to determine the facts of the case - - which must be assessed regarding the Defendants actions and interactions as shown by largely the same evidence.  This does not risk any "prejudice" to Bronson.

What Bronson really argues is that the jury will then be too stupid to follow this Court's instructions regarding the law.  But "[j]uries are not as stupid as it pleases some people to believe."  *General Mills Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 713 (6th Cir. 1982).  And Bronson offers nothing but its conclusory assertion that the jury in this case will be.

The speculative risk of "prejudice" argued by Bronson has no basis in fact.  Baseless speculation does not outweigh the genuine risk of inconsistent adjudications of common factual issues in this case or the obvious burden of compelling the same witnesses to give their accounts of the same events at two different trials.

**CONCLUSION AND RELIEF REQUESTED**

For the reasons described above, consolidation of Plaintiff Dunigan's two cases

for trial is proper under Fed. R. Civ. P. 42(a), and no valid arguments exist for this Court

to conduct separate trials.  There should be one consolidated trial regarding the claims in

Plaintiff Dunigan's two Complaints.

/s/Allan C. Vander Laan
Cummings, McClorey, Davis & Acho, P.L.C.
2851 Charlevoix Dr., SE, Ste. 327
Grand Rapids, MI 49546
Ph: (616) 975-7470
P33893
Primary Email: avanderlaan@cmda-law.com
Attorneys for Defendants

Dated: February 28, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: (none).

/s/ Allan C. Vander Laan
Allan C. Vander Laan

00651182-1

7